UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL MEANS EQUAL,<br>HEROICA FOUNDATION,<br>JACQUELINE FENORE, individually<br>and on behalf of all others<br>similarly situated,<br><br>                Plaintiffs,<br><br>       v.<br><br>DONALD JOHN TRUMP, in his<br>official capacity as President<br>of the United States; CRAIG BROWN,<br>in his official capacity as<br>acting director of the Selective<br>Service System; SELECTIVE SERVICE<br>SYSTEM,<br><br>            Defendants. | CIVIL ACTION<br>NO. 25-10806-WGY |

YOUNG, D.J.                                      April 21, 2026

**MEMORANDUM AND ORDER**

Jacqueline Fenore ("Fenore") attempted to register for the Selective Service and was rejected because she is a woman. Fenore, along with the Equal Means Equal and Heroica Foundation ("Equal Means Equal")[1], allege that the Military Selective Service Act, 50 U.S.C. § 3801 et seq., ("the Selective Service Act" or "the Act") discriminates against women by prohibiting

---

[1] Equal Means Equal is a project of the Heroica Foundation, a nonprofit organization.  Compl. ¶ 3.

them from registering for the Selective Service and request declaratory and injunctive relief.  Fenore and Equal Means Equal bring two counts, both challenging the constitutionality of the Act under the purported Equal Rights Amendment ("the ERA") (count I), and the Fifth Amendment (count II).

The Defendants -- President Donald Trump, Acting Director of Selective Service Craig Brown, and the Selective Service System ("the Public Officials") -- move to dismiss all counts on the grounds that this Court lacks subject matter jurisdiction over this action because Fenore and Equal Means Equal lack Article III standing.  The Public Officials also move to dismiss both claims based on Fenore and Equal Means Equal's failure to state a claim.

For the reasons stated at the hearing, the motion to dismiss as to count I was, and is, **ALLOWED** as to both Equal Means Equal and Fenore.  For the reasons explained below, the motion to dismiss as to count II is also **ALLOWED** as to both Equal Means Equal and Fenore.

## I.  BACKGROUND

### A.    Procedural History

Equal Means Equal and Fenore filed a suit against the Public Officials.  Compl. ¶ 1, 4-6, ECF No. 1.  Equal Means Equal alleges two claims of gender discrimination, and requests declaratory and injunctive relief.  Id. at 11; ¶¶ 27-40.  First,

[2]

Equal Means Equal alleges that the Selective Service Act violates the ERA -- as it posits, the so-called 28th Amendment.[2] Id. ¶¶ 27-34.  Second, Equal Means Equal alleges that the Selective Service Act violates the Fifth Amendment guarantee to equal protection of the laws based on due process.  Id. ¶¶ 35-40.  The Public Officials move to dismiss all counts.  Defs.' Mot. Dismiss, ECF. No 8; Mem. Points & Authorities Supp. Defs.' Mot. Dismiss ("Defs.' Mem."), ECF No. 9.  The parties have fully briefed the issues.  Pls.' Opp'n Defs.' Mot. Dismiss ("Opp'n"), ECF No. 11; Reply Supp. Defs.' Mot. Dismiss, ECF No. 15; Notice of Supp. Authority, ECF No. 26.  This Court held a hearing on March 24, 2026, dismissing count I and taking count II under advisement.  Electronic Clerk's Notes, ECF No. 34.

### B.   Facts Alleged

On March 28, 2025, Fenore -- a female -- attempted to register for Selective Service on the website "https://www.sss.gov/register/".  Compl. ¶ 11.  Her registration was rejected.  Id.  Two other unnamed female members of Equal Means Equal also unsuccessfully attempted to register for Selective Service.  Id. at ¶ 12.  The Public Officials do not

---

[2] The Court disposed of this argument from the bench in light of controlling precedent.  But see Julie C. Suk, Not the People: How the Courts Cuts Voters Out of Amendment, 77 FLA. L. REV. 1337 (2025) (acknowledging but decrying this precedent).

dispute that these registrations were denied because the applicants are female.

Fenore alleges that apart from her gender, she is "otherwise qualified" to register for Selective Service. Compl. ¶ 11. The Public Officials do not dispute this assertion.

## II. ANALYSIS

### A.    Pleading Standard

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts "draw every reasonable inference" in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000), but disregard statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (brackets, ellipsis, and quotations omitted).

### B.    Equal Means Equal and Fenore Have Article III Standing

The Public Officials argue that the Court is without subject matter jurisdiction over this action because Equal Means Equal and Fenore lack Article III standing. Defs.' Mem. at 8. Standing requires an injury in fact that is (1) concrete and

[4]

particularized, and actual or imminent; (2) traceable to the defendant's actions; and (3) redressable by court action.  See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  "The first requirement, injury in fact, requires the plaintiff to demonstrate an injury that is 'concrete,' 'particularized,' and 'actual or imminent, not speculative.'" Diamond Alternative Energy, LLC v. Environmental Prot. Agency, 145 S. Ct. 2121, 2133 (2025) (quoting Food & Drug Admin. v. Alliance for Hippocratic Med., 144 S. Ct. 1540, 1556).

"An injury in fact must be 'concrete,' meaning that it must be real and not abstract." Food & Drug Admin., 144 S. Ct. at 1556 (2024) (citing TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021)).  The injury must also be particularized -- affecting "the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1.  Physical and monetary injuries are archetypal, historically representative injuries in fact.  See Food & Drug Admin., 144 S. Ct. at 1556; Webb v. Injured Workers Pharmacy, LLC, 72 F.4th 365, 372 (1st Cir. 2023) (citing Transunion, 141 S. Ct. 2190)).

On the other hand, "stigmatic", "dignitary", and "stereotyping" injuries are generally more difficult to establish in relation to a required historical analogue as

[5]

articulated in Spokeo, Inc. v. Robins, 578 U.S. 330, 340-41 (2016) and Transunion, 141 S. Ct. 2190, 2200.  See also Opiotennione v. Bozzuto Mgmt. Co., 130 F.4th 149, 156 (4th Cir. 2025) (quoting Allen v. Wright, 468 U.S. 737, 755 (1984)).

### 1. **Standing Case Law** and **the Selective Service Act**

The First Circuit has not directly addressed whether denial of registration under the Selective Service Act represents an injury in fact for purposes of Article III standing.  It did, however, decide another case brought by Equal Means Equal that tested the group's standing to bring a challenge relating to the ERA.  Equal Means Equal v. Ferriero, 3 F.4th 24 (1st Cir. 2021).

In Ferriero, Equal Means Equal brought suit against the Archivist of the United States (at the time, David S. Ferriero), seeking to compel him to publish the ERA.  Id. at 27.  At the district court, Judge Casper ruled that Equal Means Equal lacked Article III standing to move forward based on the alleged harm resulting from the Archivist's failure to publish.  Equal Means Equal v. Ferriero, 478 F. Supp. 3d 105, 110 (D. Mass. 2020) (Casper, J.).  She also ruled that the individually named plaintiff lacked standing.  Id. at 119.  The individual alleged that she "personally suffered violence and unequal protection and enforcement of the laws based on gender."  Id. at 118 (internal quotations omitted).  The court ruled, however, that past violence did not evidence a threat of future violence, and

[6]

that a general lack of equal protection represented a type of "generalized injury" that was "neither particularized nor concrete". Id.

On appeal, Judge Barron, writing for the First Circuit panel, affirmed the dismissal of the suit based on a lack of standing without reaching the merits of the ERA arguments. Ferriero, 3 F.4th at 31. The First Circuit embraced similar reasoning as the district court, ruling that the individual plaintiff did not identify a sufficient causal link between the Archivist's failure to publish the ERA and an increased risk of gender-based violence. Id. at 29. As Ferriero did not challenge the Selective Service Act, it does not control here.

Both parties also cite a 2003 case from this district that is inapposite to this case. In Schwartz v. Brodsky, 265 F. Supp. 2d 130 (D. Mass. 2003) (Harrington, J.), Judge Harrington granted the Government's motion to dismiss a claim by four men and one woman challenging the Selective Service Act under constitutional equal protection. Id. at 135. In a footnote, the court observed that:

> As to Plaintiff Foley, lack of standing provides the Court an alternative ground for dismissal. Individuals "who have never been registered with the Selective Service System and are not under any compulsion to register in the near future" suffer no "distinct and palpable harm nor imminent threat of concrete harm ... sufficient to establish standing...." Goldberg v. Rostker, 509 F. Supp. 586, 591 (E.D. Pa. 1980), overruled

on other grounds by <u>Rostker</u> v. <u>Goldberg</u>, 453 U.S. 57, 101 S. Ct. 2646, 69 L. Ed. 2d 478 (1981).

<u>Id.</u> at 130 n.1.

<u>Schwartz</u> is distinguishable from the present fact pattern because the female plaintiff in <u>Schwartz</u> did not attempt to register for Selective Service, was not denied registration for selective service, and did not plead any desire to serve her country via participation in the Selective Service System.  <u>Cf.</u> Compl., <u>Schwartz</u>, 265 F. Supp. 2d 130 (No. CIV.A. 03-10005-EFH), ECF No. 1.

While the First Circuit thus has not addressed this exact question, one other district has.  In <u>Kyle-Labell</u> v. <u>Selective Serv. Sys.</u>, 364 F. Supp. 3d 394, 401 (D.N.J. 2019), Judge Salas ruled that a female plaintiff who unsuccessfully registered under the Selective Service Act possessed standing as required for Article III justiciability.  <u>Id.</u> at 401.  The same court ruled that not being able to register for the draft was a unique injury distinguishable from the plaintiff's ability immediately to enlist in the military.  <u>See</u> <u>Kyle-LaBell</u> v. <u>Selective Serv. Sys.</u>, No. CV155193ESJAD, 2018 WL 1535230, at *4-5 (D.N.J. Mar. 29, 2018).

[8]

**2. Equal Means Equal Lacks Article III Associational Standing**

The Public Officials argue that this Court is without subject matter jurisdiction because Equal Means Equal and Fenore lack Article III standing.  The Public Officials allege that both the organization and the individual plaintiff have failed to establish injury in fact, and that Equal Means Equal does not identify its affected members as required for associational standing.  Defs.' Mem. 9, 13.  Equal Means Equal does not claim organizational standing.  Opp'n 19 n.34. Organizational standing requires harm to an organization's "core[] activities" rather than a "coming to the nuisance."  American Ass'n of Univ. Professors v. Rubio, 802 F. Supp. 3d 120, 180 (D. Mass. 2025), judgment entered, No. CV 25-10685-WGY, 2026 WL 524753 (D. Mass. Jan. 22, 2026), appeal docketed, No. 26-1195 (1st Cir. Feb. 24, 2026).

Equal Means Equal lacks associational standing to bring these claims.  Equal Means Equal has pled that two of its members -- both women -- also applied for and were rejected from registration under the Selective Service Act.  Compl. ¶ 12.  The Public Officials do not dispute this allegation.  Equal Means Equal, though, has failed to name either member.  Under First Circuit precedent, Equal Means Equal cannot be found to have established associational standing without naming its members.

[9]

For an organization to claim associational standing, it "must show that at least one of its members has standing in her own right." Ferriero, 3 F.4th at 29 (citing Council of Ins. Agents & Brokers v. Juarbe-Jiménez, 443 F.3d 103, 108 (1st Cir. 2006)). The First Circuit has also stated that the organization claiming associational standing must "identify" that member. See Housatonic River Initiative v. United States Env't Prot. Agency, New England Region, 75 F.4th 248, 265 (1st Cir. 2023) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009)).

In Draper v. Healey, 827 F.3d 1 (1st Cir. 2016), Justice Souter (sitting by designation in retirement) interpreted Summers to require the naming of the injured plaintiff for an organization to establish associational standing. Id. at 3.

This explicit naming requirement, however, has not been consistently applied across the First Circuit in recent years. In Faculty, Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n, No. CV 18-12105-LTS, 2019 WL 3754023 (D. Mass. Aug. 8, 2019) (Sorokin, J.), Judge Sorokin wrote that "the Court need not resolve whether cases like Draper and Summers mandate the naming of names at the pleading stage." Id. at *6. Judge Sorokin ultimately ruled that the association lacked standing because it failed to list any descriptive qualities about the members of association claiming injury. Id. at *7.

[10]

Judge Sorokin noted that in other cases, organizations claiming associational standing had proffered ethnicities, test scores, and academic backgrounds of the individual member who was alleged to have been injured.  Id. at *6 (citing Compl. ¶¶ 15-24, Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 261 F. Supp. 3d 99 (D. Mass. 2017) (Burroughs, J.) (No. 14-cv-14176-ADB), ECF No. 1, aff'd sub nom., Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 980 F.3d 157 (1st Cir. 2020), rev'd on other grounds, 143 S. Ct. 2141 (2023)).

In Housatonic River Initiative v. United States Env't Prot. Agency, 75 F.4th at 265 (1st Cir. 2023), associational standing was upheld when affidavits naming individuals were submitted as a part of the administrative record.

Finally, in 2025, a First Circuit panel refused to terminate the associational standing of an organization despite its failure to name injured individuals.  See Capen v. Campbell, 134 F.4th 660, 667-68 (1st Cir. 2025).  The First Circuit explained that the organization could later add named members and cure any standing issues.  Id. at 668.  After the appeal returned to the district court, the plaintiffs added initials only ("'E.H.,' 'F.D,' 'T.M.,' 'W.D,' and 'J.R.'") to represent named members of the organization.  See First Am. Compl. ¶ 21, Capen v. Campbell, No. 22-cv-11431-FDS (D. Mass. Sept. 4, 2025),

[11]

ECF No. 83.  That case is currently stayed until July 2026 while the parties await the Supreme Court's disposition of a case with similar issues.  Electronic Clerk's Notes, Capen, No. 22-cv-11431-FDS, ECF No. 95.

Because neither Draper nor Summers have been explicitly overruled either by this Circuit nor by the Supreme Court, the explicit naming of individuals to establish associational standing is required by precedent.  While the First Circuit recently allowed an associational standing claim to progress without such naming, that decision did not overrule Draper or Summers.  As this Court is duty-bound to follow First Circuit precedent, the Court **GRANTS** the Government's 12(b)(1) motion to dismiss based on a lack of subject matter jurisdiction for Equal Means Equal without prejudice.

### 3. Fenore has Article III Individual Standing

Fenore, as an individual, has demonstrated standing as required by Article III of the Constitution.  The Public Officials argue that Fenore cannot claim injury on the part of men who are forced to register.  Defs.' Mem. 8-9; cf. Valame v. Trump, 157 F.4th 1172 (9th Cir. 2025) (in which a male claimed injury by being forced to register under the Selective Service Act against his wishes).  The Public Officials' citation to Valame is unpersuasive because, unlike that case, Fenore is

[12]

claiming an independent injury to herself as a woman, incurred because she is a woman.  Compl. at 8.

The Public Officials further contest that Fenore has suffered an injury in fact.  Defs.' Mem. 9.  Fenore claims two types of injury in response: a traditional injury based on a stigmatic injury and discriminatory exclusion.

To establish a stigmatic injury, Fenore must show that she was "personally subject to discriminatory treatment" and "identification of some concrete interest."  Allen v. Wright, 468 U.S. 737, 757 n.22 (1984).  Fenore has satisfied both requirements.  She has been personally subject to discriminatory treatment as her registration was denied because of her gender, and she has identified a concrete interest -- a desire to engage in a specific form of military service via registration with the Selective Service.

The First Circuit recently considered stigmatic injuries in the context of disability testers.  See Laufer v. Acheson Hotels, LLC, 50 F.4th 259 (1st Cir. 2022), vacated and remanded on mootness grounds, 144 S. Ct. 18 (2023).  In Laufer, Judge Thompson wrote for the panel that "[d]ignitary harm or stigmatic injuries caused by discrimination have long been held a concrete injury in fact . . . ."  Id. at 274 (citing Heckler v. Mathews, 465 U.S. 728, 738-40 (1984)); Allen, 468 U.S. at 755; Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 833-34 (7th Cir.

[13]

2019) ("There is no doubt that dignitary harm is cognizable; stigmatic injury is 'one of the most serious consequences' of discrimination.") (citation omitted)).  See generally Note, Acheson Hotels, LLC v. Laufer, 138 HARV. L. REV. 285 (2024).

The Public Officials did not contest the first prong of the Allen test at oral argument, conceding that Fenore applied for and was rejected on the basis of her gender.  Rather, the Public Officials assert that Fenore fails the second prong of the Allen test.  The Public Officials argue that Fenore is not injured because she has no "concrete interest" in registration since she may voluntarily enlist in the military at the present time. Defs.' Mem. 10.  Fenore's desire to register for Selective Service, however, is distinct from a desire to enlist immediately in the military.  Selective Service registration represents Fenore's desire to be automatically considered for the draft should Congress and the President trigger it.  See Opp'n 18.  Conversely, immediate enlistment represents a desire to serve at the current moment, when there is there no ongoing "national emergency"[3] and the current administration appears at pains to reduce the career paths open to women's service in the United States Army.  See, e.g., the current Secretary of Defense

---

[3] Return to the Draft, SELECTIVE SERVICE SYSTEM https://www.sss.gov/about/return-to-draft/ [https://perma.cc/KZ5G-SHRA](last visited Mar. 26, 2026).

[14]

stating prior to his appointment that "I'm straight up saying that we should not have women in combat roles."[4]

Variations of service commitments and willingness to serve in different circumstances are replete within our military.  The National Guard, Reserves, and Inactive Ready Reserve all represent different tiers of service which individuals may elect to pursue.[5]  Under the Public Officials' logic, a woman would have no standing to sue for gender-based exclusion from the National Guard or Army Reserves, so long as active duty enlistment was permitted.  The availability of active duty enlistment does not eliminate the injury caused by gender-based restrictions on other forms of military service availability.

The Public Officials' standing argument also contradicts Supreme Court precedents that implicitly upheld standing for women excluded from other military settings.  See, e.g., United States v. Virginia, 518 U.S. 515, 523 (1996).  In Virginia, the plaintiff's "concrete interest" of participating in another subset of military service (attending a military academy that, at the time, did not even require military service upon

_____

[4] THE SHAWN RYAN SHOW: #143 Pete Hegseth - Secretary of Defense Nominee at 00:57:02 (Spotify, Nov. 7, 2024).

[5] Morgan Thomas, Military 101: Understanding the Differences between Active Duty, National Guard and Reserves, THE COUNCIL OF STATE GOVERNMENTS (Dec. 19, 2023), https://www.csg.org/2023/12/19/military-101-understanding-the-differences-between-active-duty-national-guard-and-reserves/ [https://perma.cc/TL2H-WA8Z].

graduation) was "concrete" enough for justiciability.[6]  Under the
Public Officials' logic, the plaintiff in Virginia would also
lack standing to sue because she could simply have enlisted on
active duty[7] or attended a less distinguished Reserve Officers'
Training Corps program at a women's-only school.  See Virginia,
518 U.S. at 526-27.  The standing issue was not explicitly
raised in that case.  Yet, the federal courts that heard the
case at every level necessarily exercised subject matter
jurisdiction to hear the claim under Article III based on the
alleged injury of the plaintiff's rejection from the Virginia
Military Academy on the basis of her gender.

Since the availability of active duty enlistment does not
extinguish an injury resulting from exclusion from different
forms of military availability, and because of the precedent
established in Virginia, 518 U.S. 515, the Court rules that
Fenore has Article III standing to proceed individually.[8]

---

[6] "The mandatory commissioning policy requiring a cadet to
accept a commission for active military duty upon graduation
[was] abolished" in 1990.  Gary Robertson, On The Line, VIRGINIA
BUSINESS (Feb. 27, 2022) https://virginiabusiness.com/on-the-line/
[https://perma.cc/8ELR-W9FA].

[7] See Women's Armed Services Integration Act of 1948, Pub.
L. 625, 62 Stat. 356 (1948).

[8] Having ruled that Fenore has standing based on a stigmatic
injury, the Court need not, and does not, decide whether
discriminatory exclusion from participation in a public program
constitutes a traditionally recognized injury.  See Opp'n 16.

**C.    The Selective Service Act does not Violate the Fifth Amendment under Supreme Court Precedent**

Fenore claims that the Selective Service Act violates the equal protection component of the Fifth Amendment's due process clause.  Compl. ¶ 1, 35-40.  As the Supreme Court has directly ruled on this question, the motion to dismiss as to count II is **ALLOWED**.

In Rostker v. Goldberg, 453 U.S. 57 (1981), the Supreme Court held that the male-only draft did not violate the due process clause.  Id. at 83.  The Court applied a somewhat opaque standard of scrutiny that balanced gender-based discrimination with the deference normally given in military affairs.  Id. at 69-70.  The Court's reasoning rested heavily on the then-operative ban on women serving in combat.  Id. at 76.  Rostker was most recently challenged in 2020, when the Supreme Court denied certiorari in the case of National Coal. for Men v. Selective Serv. Sys., 141 S. Ct. 1815 (2021) (on appeal from the Fifth Circuit).  Justice Sotomayor, joined by Justices Breyer and Kavanaugh, wrote respecting the denial of certiorari.  She acknowledged the change in circumstances underlying Rostker in the forty years since its publication, to include a lifting of the former ban on females in combat positions.  Id. at 1816.  She supported the denial of certiorari, however, in light of Congress's consideration of a report from the National

[17]

Commission on Military, National, and Public Service recommending that the draft be opened to women.  Id.  In the five years since National Coalition for Men was decided, drafters of the annual National Defense Authorization Act have attempted and failed to include women in Selective Service.[9]

Fenore argues that the Rostker decision rested heavily on the then-policy excluding women from combat in the armed forces. Compl. ¶ 15; see Rotsker, 453 U.S. 76-78.  Since women are now permitted to serve in all combat roles, Fenore argues, the Court is not bound by Rotsker.[10]  She argues that these changed circumstances undercut the factual record on which the Rostker decision rests and allow this Court to disregard the typical rules of stare decisis.  See Opp'n 14.

The First Circuit considered this question in 2011 in Elgin v. United States Dep't of Treasury, 641 F.3d 6 (1st Cir. 2011), aff'd sub nom. Elgin v. Department of Treasury, 567 U.S. 1 (2012).  Speaking for the court, Judge Boudin dismissed the case on technical grounds without reaching the merits -- though

---

[9] See Brad Dress, GOP Senators Push to Take Out Provision in Defense Bill to Draft Women in Military, THE HILL (Dec. 5, 2024) https://thehill.com/policy/defense/5025205-senate-republicans-oppose-women-selective-service-system/ [https://perma.cc/23MM-DG43].

[10] The Department of Defense voluntarily opened all combat positions to women in 2015.  See Remarks on the Women-in-Service Review, UNITED STATES DEPARTMENT OF WAR (Dec. 3, 2015), https://www.war.gov/News/Speeches/Speech/Article/632495/remarks-on-the-women-in-service-review/ [https://perma.cc/WSL4-75LM].

acknowledging that "[t]he substantive constitutional claims in this case are unpromising, given that one conflicts with governing Supreme Court precedent" (in reference to the equal protection claim). Id. at 12. In a concurrence, Judge Stahl acknowledged that while the underlying logic of Rostker was no longer operative given women's ability to enter combat roles, "[n]o part of Rostker has been overruled" and that deciding otherwise ought be "a task left solely to the Supreme Court." Id. at 22-24.

At oral argument, Fenore pointed to the voting rights context for the proposition that "things have changed dramatically," warranting judicial reconsideration. Shelby Cnty. v. Holder, 570 U.S. 529, 547 (2013). In Shelby County, the Supreme Court ruled a section of the Voting Rights Act unconstitutional because formulas utilized by the statute were based on "decades-old data and eradicated practices." Id. at 551. The changed circumstances, the Court determined, allowed it to reconsider the question of the section's constitutionality. Id. at 556-57.

This Court is, nevertheless, "in no position to overrule binding Supreme Court precedent." United States v. Diggins, 36 F.4th 302, 311 (1st Cir. 2022) (citing United States v. McIvery, 806 F.3d 645, 653 (1st Cir. 2015)). See also National Inst. of Health v. American Pub. Health Ass'n, 145 S. Ct. 2658, 2663

(2025) (Gorsuch, J., concurring in part and dissenting in part). The equal protection challenge to the Military Selective Service Act is thus, as emphasized by the First Circuit in Elgin, foreclosed by binding Supreme Court precedent.  Accordingly, this Court must grant the Public Officials' motion to dismiss count II as to Fenore.

**III.   CONCLUSION**

The Court rules that Equal Means Equal has not demonstrated associational standing as required by First Circuit precedent. Fenore has demonstrated individual standing on the basis of a stigmatic injury.  The motion to dismiss as to count I was **ALLOWED** at the hearing, see Electronic Clerk's Notes, ECF No. 34, for the reasons discussed on the record.

The motion to dismiss as to count II is **ALLOWED** as to Equal Means Equal due to its lack of standing, and **ALLOWED** as to Fenore due to binding Supreme Court precedent foreclosing an equal protection claim against the Selective Service Act.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE[11]

---

[11] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.

[20]